# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAL BARKER, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Case No. 07-CV-0224-MJR |
| | ) |
| EDUCATIONAL CREDIT | ) |
| MANAGEMENT CORPORATION, | ) |
| | ) |
| Appellee. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This case comes before the District Court on Appellant Hal Barker's appeal of the Bankruptcy Court for the Southern District of Illinois's Order denying his claim for discharge of educational loans. For the reasons explained below, the Court **AFFIRMS** the bankruptcy court's order.

### A. Introduction and Procedural History

On August 6, 2002, Barker filed a petition for Chapter 13 bankruptcy relief (Case No. 02-41788, Doc. 1). Barker's Chapter 13 petition was ultimately terminated by a final decree entered on February 16, 2005 (Case No. 02-41788, Doc. 31). On March 14, 2006, Barker filed a motion to reopen his Chapter 13 proceedings to file an adversarial complaint (Case No. 02-41788, Doc. 37), which was granted on April 3, 2006 (Case No. 02-41788, Doc. 38). On April 25, 2006, Barker brought an adversary proceeding seeking to discharge government-guaranteed educational loans owed to various parties, including Educational Credit Management Corporation (ECMC), a not-for-profit organization that administers guaranteed student loans (Case No. 06-04089, Doc. 1).

1

Barker appeared pro se in the adversarial proceedings and filed his amended complaint on July 24, 2006, disputing the amount of his student loans and alleging that his student loans should be discharged on the grounds of undue hardship pursuant to 11 U.S.C. § 523(a)(8) (Case No. 06-04089, Doc. 31). On June 8, 2006, ECMC filed a motion to substitute defendant, asserting that it held the student loans in issue and was the proper party in interest (Case No. 06-04089, Doc. 17). On June 13, 2006, the bankruptcy court set a hearing and ordered ECMC to submit a report on the history of the loans (Case No. 06-04089, Doc. 21). ECMC submitted the affidavit of Kelly Prettner establishing the history and amount of the loans on July 7, 2006 (Case No. 06-04089, Doc 27 & 28). In its September 12, 2006 ruling, the bankruptcy court accepted as true the affidavit of Kelly Prettner, Attorney for ECMC, and ruled that ECMC was the proper party in interest and had verified the proper amount of the loans as $72,012.28. As a result, the bankruptcy court struck these issues from Barker's amended complaint (Case No. 06-04089, Docs. 28 & 42; *see also* Doc. 21-4, p. 4).

On November 15, 2006, Barker filed a brief in support of his amended complaint, accompanied by over 200 documents (Case No. 06-04089, Doc. 52).[1] On January 30, 2007, a hearing was held before the Honorable Kenneth J. Meyers in the U.S. Bankruptcy Court for the Southern District of Illinois. After considering the evidence and arguments of Barker and ECMC, the bankruptcy court entered an order on February 13, 2007 denying Barker's claim for discharge of student loans (Case No. 06-04089, Doc. 71).

The bankruptcy court made several factual findings in support of its decision. (Case No. 06-04089, Doc. 71). The bankruptcy court found that Barker is a 38-year-old healthy man not suffering from any medical infirmity that would prohibit him from obtaining gainful

---

[1] In its March 16, 2007 Order the bankruptcy court noted that, although Barker did not move for admission of any exhibits during the January 27, 2007 hearing, it considered Barker's November 15, 2006 brief and the attached documents prior to making its decision (Case No. 06-04089, Doc. 80).

employment.  The court also noted that Barker holds a B.A. in Christian Ministries, a Masters Degree in Theology and Philosophy, and a Masters Degree in Counseling from Lincoln Christian College and Seminary.  Between 1996 and 2005, Barker was employed and earned between $30,000 and $40,000 each year, except for a brief period of unemployment in 2000 where he only earned $13,720.  Barker is currently unemployed and residing with a friend.  Additionally, Barker is divorced and has four sons, ages 9, 12, 15, and 16.  Upon reemployment, Barker will be required to provide child support for his four children.  The bankruptcy court also found that Barker owes $72,012.28 on various student loans, each of the type described in 11 U.S.C. § 523(a)(8).  The bankruptcy court further noted that Barker had requested several forbearances and deferments and had made only a handful of payments on his student loans.

The bankruptcy court applied the three-pronged *Brunner* test, established by the Second Circuit and adopted by the Seventh Circuit, to determine whether Barker had established that his student loans presented an undue hardship.  **Matter of Roberson, 999 F.2d 1132 (7th Cir. 1993) (adopting *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987)).**  With regard to the first prong of the *Brunner* test, the bankruptcy court found that Barker did not demonstrate that his temporary unemployment and financial strain would prevent him from maintaining a minimal standard of living if forced to repay the loans.  With regard to the second prong of the *Brunner* test, the bankruptcy court found that Barker's age, education, past employment history, health, and other financial obligations did not indicate that his state of financial affairs would likely persist for a substantial portion of the repayment period.  Because the bankruptcy court found that Barker failed to meet his burden of establishing the first two prongs of the *Brunner* test, the court made no analysis of the third prong (whether Barker made good-faith efforts to repay the loans).

On March 28, 2007, Barker filed a thirty-one page notice of appeal in this District Court (Doc. 1). Barker challenges the bankruptcy court's determination of the amount of his student loans and its finding that the student loans could not be discharged because Barker failed to establish an "undue hardship." In response, ECMC disputes whether documents attached to Barker's appellate brief are properly before this Court for consideration on appeal and has filed a motion to strike (Docs. 19 & 24). The Court, having fully considered the record and the briefs submitted by both parties, **AFFIRMS** the decision below.

## B.  Scope of the Record on Appeal

On December 14, 2007, ECMC filed a motion to strike portions Barker's brief on the grounds that Barker's exhibits were not part of the record below (Doc. 19).[2] On December 27, 2007, Barker filed a motion in opposition to ECMC's motion to strike (Doc. 24), a military document Barker acknowledges was not before the bankruptcy court (Doc. 25), and a designation of the record on review (Doc. 27). Barker maintains that the exhibits attached to his brief were considered by the bankruptcy court and asks this Court to consider these exhibits along with additional exhibits that were not before the bankruptcy court.

It is a well-recognized principle in the Seventh Circuit that "the Court does have a duty to 'take appropriate measures to permit the adjudication of pro se claims on the merits, rather than to order their dismissal on technical grounds." ***In re Crossen,* 333 B.R. 794, 798 (Bankr. N.D. Ill. 2005).** Pro se litigants are "entitled to have [their] filings construed more liberally than papers which are drafted by attorneys, although this does not change the substantive law governing the rights of the parties, merely the court's expectations concerning a

---

[2] On the same date, ECMC also filed a designation of record on appeal (Doc. 20). Therein, ECMC designated the following items for inclusion in the record: 1) Amended Complaint by Hal E. Barker against ECMC; 2) Answer to Amended Complaint Filed by Defendant ECMC; 3) Order and Judgment of the Court dated February 14, 2007; 4) Plaintiff's Notice of Appeal; 5) Trial Exhibits 1, 2, 3, 7, 8, 9, 12, 13, and 15 of Defendant ECMC; and 6) the January 30, 2007 trial transcript.

pro se litigant's ability to comply with the court's procedural requirements." *In re Loubser*, **2006 WL 219059, \*1 (Bankr. N.D. Ind. July 31, 2006) (citing *Kincaid v. Vail*, 969 F.2d 594, 598 (7th Cir. 1992));** *see also Estelle v. Gamble*, **429 U.S. 91, 106 (1976);** *Anderson v. Hardman*, **241 F.3d 554, 545 (7th Cir. 2001).**

An adversary proceeding in bankruptcy presumes and in large measure relies upon the file in the underlying case. *Berge*, **37 B.R. at 708**. As reflected in both the Federal Appellate Rules and the Bankruptcy Rules, considerations of judicial impartiality dictate allowing the appellant greater latitude and broad discretion in designating the record on appeal. *Id.* As a result, "[a] reviewing court should have before it 'all documents and evidence considered by the bankruptcy judge in reaching his decision.'" *Id.* **at 707 (quoting *In Re Food Fair, Inc.*, 15 B.R. 569, 572 (Bankr. S.D.N.Y. 1981)).**

Barker's 31-page notice of appeal fully sets forth the issues Barker raises on appeal and designates exhibits B1-B227 (Doc. 1). Documents specified by Barker within his notice of appeal can properly be considered a designation of record by a pro se litigant within the spirit of **Bankruptcy Rule 8006** (*see* Doc. 17). Barker filed each of these exhibits with the bankruptcy court on November 15, 2006 in a pre-trial brief supporting his amended complaint (Case No. 06-04089, Doc. 52). While it is true that Barker did not move to admit any of these exhibits into evidence during trial before the bankruptcy court, it is clear that the Court considered them in making its decision. In its March 17, 2007 Order, the bankruptcy court stated:

> On November 15, 2006, the debtor filed a brief accompanied by over 200 documents. These documents were reviewed by the Court in reading the debtor's brief. However, at hearing, the debtor did not specifically refer to any of these documents, nor did he move for admission of any of these documents into evidence. The debtor's evidence and arguments were considered by this

> Court. They were merely insufficient to sustain the debtor's
> burden for proving an undue hardship.

(Case No. 06-04089, Doc. 80). After reviewing and comparing the record, the Court finds that exhibits B1-B227 attached to Barker's brief are identical to those filed in the bankruptcy proceedings on November 15, 2007. The bankruptcy court clearly considered these exhibits in its decision. However, Exhibits 300-302, which both parties reference, were not properly designated in Barker's notice of appeal. In fact, it appears that these exhibits have not been filed in this action, nor were they filed in the bankruptcy court action. Therefore, these documents cannot be considered. Furthermore, as acknowledged by Barker, the military document he filed on December 27, 2007 (Doc. 25) was never part of the bankruptcy proceedings and therefore cannot be considered by this Court.

Additionally, ECMC moves to strike Barker's arguments in Doc. 6-9, Exhibit B, which pertain to the William D. Ford program. Barker's arguments reference phone conversations and internet investigation Barker conducted after the bankruptcy proceedings concluded (Doc. 6-9, pp. 24-25). As evidence regarding the William D. Ford was presented by both parties during the bankruptcy hearing, Barker's arguments regarding that evidence are properly considered by this Court to the extent that the bankruptcy court considered evidence on these matters (*See* Doc. 21-4, pp. 12-14, 34-38). However, the post-trial evidence presented in Appendix B, including internet investigation and telephone calls conducted after the bankruptcy hearing was concluded, will not be considered because it was not within the record below.

Finally, the Court cannot properly consider the designation of record filed by Barker on December 27, 2007, which was filed after the issues on appeal had been fully briefed by both parties. A designation filed after full briefing by both parties is prejudicial to the Appellee, as it had no opportunity to address these documents in its earlier brief. For these

reasons, the documents listed in the designation of record filed by Barker on December 27, 2007 (Doc. 27) cannot be considered by this Court.

The Court limits its scope of review to the documents as described above. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** ECMC's motion to strike (Doc. 19). Electronic filing makes it difficult to physically strike portions of documents. Therefore, rather than striking the objectionable documents, the Court instead **SHALL NOT CONSIDER** the following documents: Exhibits 300-302, the military document filed by Barker on December 27, 2007 (Doc. 25), post-trial evidence of telephone conversations and internet investigations referenced in Document 6-9, Exhibit B (Doc. 6-9, pp. 24-25), and Barker's designation of record filed December 27, 2007 (Doc. 27).

### C. Review of Amount of Outstanding Debt

Next, Barker alleges there is insufficient proof of the amount of the loans he owes to ECMC. The bankruptcy court found that Barker owes $72,012.28 on various student loans (Case No. 06-04089, Doc. 71). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." **FED. R. BANKR. P. 8013;** *see also Roberson*, **999 F.2d at 1137 (holding that the Court "accept[s] the bankruptcy court's findings of fact, with the exception of those that are clearly erroneous").**

On June 13, 2006, the bankruptcy court ordered ECMC to produce a report of the history of the loans (Case No. 06-04089, Doc. 21). ECMC submitted the affidavit of Kelly Prettner establishing the history and amount of the loans on July 7, 2006 (Case No. 06-04089,

Doc. 27 & 28). On July 18, 2006, the bankruptcy court conducted a hearing as to the proper party in interest and the amount of the loans (Case No. 06-04089, Doc. 29).

The confusion surrounding the amount of Barker's outstanding educational debt arises from an application Barker made to consolidate all of his student loans on June 16, 2002, shortly before filing his Chapter 13 bankruptcy on August 6, 2002 (Case No. 02-41788, Doc. 1). Although the consolidation was initially approved, discovery of Barker's petition for bankruptcy resulted in the lender's subsequent denial of consolidation (Case No. 06-04089, Doc. 27 & 28). The crux of Barker's rebuttal evidence consists of a few documents produced in error by lenders resulting from the confusion (Doc. 6-9, pp. 9-23).

In its September 12, 2006 ruling, the bankruptcy court accepted as true the affidavit of Kelly Prettner, Attorney for ECMC, and ruled that ECMC was the party in interest and had verified the proper amount of the loans as $72,012.28, striking these issues from Barker's amended complaint (Case No. 06-04089, Docs. 28 & 42). Because the bankruptcy court's findings with respect to the amount of the loans is not clearly erroneous, this Court **AFFIRMS** the ruling of the bankruptcy court on this factual matter.

### D.  Review of Bankruptcy Court's February 13, 2007 Order

**1.  Standard of Review**

On appeal, the determination of whether Barker's circumstances meet the requirements adopted by the Seventh Circuit in the *Brunner* test is a question of law subject to *de novo* review. **Roberson**, **999 F.2d at 1137.** In conducting this inquiry, the Court "accept[s] the bankruptcy court's findings of fact, with the exception of those that are clearly erroneous, and place[s] the burden on [the debtor] to establish that his circumstances warrant discharge of his loans." *Id.*; *see also* **FED. R. BANKR. P. 8013 ("findings of fact, whether based on oral or**

**documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.").**

## 2. Application of *Brunner*

In challenging the bankruptcy court's February 13, 2007 Order, Barker argues that the bankruptcy court erred in finding that he did not establish undue hardship. Although government-guaranteed student loans generally may not be discharged in bankruptcy, 11 U.S.C. § 523(a)(8)(B) permits the discharge of such loans when failure to do so would "impose undue hardship on the debtor and the debtor's dependents."[3] **11 U.S.C. § 523(a)(8).** The Bankruptcy Code does not define "undue hardship." To evaluate a claim of undue hardship, Courts in the Seventh Circuit apply the Second Circuit's three-pronged *Brunner* test. ***See Matter of Roberson*, 999 F.2d 1132 (7th Cir. 1993) (adopting *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987)).**[4]

In order to meet the "undue hardship" requirement under 11 U.S.C. § 523(a)(8), a debtor must show that:

> (1) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; *and* (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; *and* (3) the debtor has made good-faith efforts to repay the loans.

---

[3] A bankruptcy "does not discharge an individual debtor from any debt…for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents…" **11 U.S.C. § 523(a)(8) (emphasis added).**

[4] Barker argues in his brief that the Court should employ a "totality of the circumstances test" as set forth in ***In re Johnson*, 5 Bankr. Ct. Dec. 5332 (Bankr. E.D. Pa. 1979).** However, the Seventh Circuit specifically declined to adopt the *Johnson* test. ***See Roberson*, 999 F.2d at 1135-1137.** As this Court is bound to follow the decisions of the Seventh Circuit, Barker's argument that this court should follow the *Johnson* test is without merit.

9

***In re O'Hearn*, 339 F.3d 559, 563 (7th Cir. 2003).** The debtor has the burden of establishing each element of the test by a preponderance of the evidence. ***Grogan v. Garner*, 498 U.S. 279, 291 (1991) ("standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard").** If the debtor fails to establish any one of the elements, the test has not been met and the Court need not continue with the inquiry. ***Roberson*, 999 F.2d at 1135.**

The first prong of *Brunner* requires an examination of the debtor's "current financial condition" to see if payment of the loans would cause his standard of living to fall below that minimally necessary. *Id*. This is the "bare minimum" required to assert a claim of undue hardship and the Seventh Circuit describes it as a common sense examination into the debtor's ability to maintain a minimal standard of living, due to the "heightened standard for dischargeability of student loans." *Id.* This "starting point" should be based on information that is generally "concrete" and "readily obtainable." *Id*.

In *Roberson*, the court analyzed the current financial conditions of the debtor, noting that he had no income and had $680 per month in expenses. ***Id.* at 1137.** The court specifically examined the bankruptcy petition and considered the debtor's assets and liabilities. *Id*. The court concluded that the debtor's financial condition at the time prevented him from maintaining a minimal standard of living and making payments on the student loans. *Id*. In *Goulet*, the court considered the current financial condition of a debtor who lived with his mother, had income of $1,490.00 for the previous year, and an annual child support obligation of $5,904.00. ***Goulet v. ECMC*, 284 F.3d 773, 776-78 (7th Cir. 2002).** The court found that, even in light of the debtor's failure to "diligently pursue employment such that he would be able

to alleviate his financial burdens," the debtor could not meet a minimal standard of living while paying the loans and satisfied the first prong of the *Brunner* test. *Id.* **at 778-79.**

Here, Barker alleges that his circumstances meet the first prong of the *Brunner* test and that his current financial condition prevents him from maintaining a minimal standard of living while making payments on the student loans. Barker is unemployed, is living temporarily with a friend, has four children, and has various financial obligations, including the payment of child support. It seems that his current financial condition might not allow him to maintain a minimal standard of living while making payments on the student loans. It is not entirely clear from the record whether the bankruptcy court limited its scope of analysis of the first prong of the *Brunner* test to "current income and expenses." However, this potential error need not detain the Court long as it is clear that the bankruptcy court correctly found that Barker did not satisfy the second prong of the *Brunner* test.

"The second prong of the *Brunner* test properly recognizes the potential continuing benefits of an education, and imputes to the meaning of 'undue hardship' a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period." ***Roberson*, 999 F.2d at 1135.** The Seventh Circuit accordingly requires "a certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Id.* **at 1136 (quoting** *In re Briscoe***, 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981)).** This is important since most student borrowers' outstanding loan requirements will dwarf assets for a time after graduation, especially when steady employment is not readily available. *Id***.** To offset the attractiveness of bankruptcy "to eliminate frustrating and burdensome loan payments," the second prong requires "additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time." *Id.*

11

**(internal quotations omitted).** This is crucial since the government, while attempting to increase the availability of higher education, is not an insurer of the value of education or the future success of each student who takes advantage of loans offered without security, cosigners, and business considerations. *Id.* **at 1135-36.** The Seventh Circuit noted that "if the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow."[5] *Id.* **at 1137.**

With respect to the second prong of the *Brunner* test, the parties in *Roberson* disputed whether the debtor's financial condition would extend over a large portion of the repayment period. *Id.* The court found that the debtor, although burdened by current unemployment, lack of transportation, and wrist and back injuries, would not be prohibited from gainful employment in the future. *Id.* Although the short term outlook was dismal, the court found that the hardships were only temporary and that they were not "insurmountable." *Id.* In *Goulet*, a 55-year-old debtor lived with his mother due to a drug and alcohol dependency, had a criminal record with two felonies, owed child support, had child support arrearages, and had accrued minimal past earnings. *Goulet***, 284 F.3d at 775-76.** Approximately $76,000 in student loan debt would have required monthly payments of around $600 until he was 76 years old. *Id.* **at 778.** Although the bankruptcy court concluded that the debtor never had the past earnings ability to make these payments, the Seventh Circuit found that these circumstances were not "insurmountable" or "exceptional" and did not meet the "certainty of hopelessness" required by

---

[5] Barker cites *Polleys*, a Tenth Circuit opinion adopting the *Brunner* test, but criticizing other courts that "appear to have constrained the *Brunner* requirements to deny discharge under even the most dire circumstances." *ECMC v. Polleys*, 356 F.3d 1302, 1308 (10th Cir. 2004). In *Polleys*, the petitioner was 45 years old with medical and psychological problems which caused ongoing medical expenses, while only having a past income of between $3,000 and $16,000. *Id.* at 1304. The Tenth Circuit discharged Polleys's student loans based on undue hardship. *Id*. Barker's circumstances are not factually similar and the court is not persuaded that Barker would even succeed under the Tenth Circuit's suggestion that "the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Id*. As that case is neither controlling nor factually similar, the Court declines to follow *Polleys* here.

the second prong of the *Brunner* test. *Id*. **at 779**. The Seventh Circuit found that the debtor's academic history indicated that he had the capacity to work and could apply himself when desired. *Id.*

Here, Barker has failed to meet the second prong of the *Brunner* test as he has not established that insurmountable or exceptional circumstances make him unable to pay his student debt for the remainder of the payment period. Barker is 38 years old and holds a B.A. Degree in Christian Ministries, a Masters Degree in Theology and Philosophy, and a Masters Degree in Counseling. Barker admitted that he does not suffer from any medical or physical infirmities which would prohibit him from obtaining employment. The evidence further demonstrates that Barker had a solid past earning record, averaging $33,845.80 per year over the past ten years and holding his last job for five years. These factors indicate that Barker's current situation is not insurmountable and that he does have the capacity to work in the future. Therefore, he has not established that there is a certainty of hopelessness in repaying the debt.

The only Seventh Circuit case that Barker cites in support of the position that he is entitled to a discharge of his student loans based on undue hardship is ***Grawey v. Illinois Student Assistance Commission*, 2001 WL 34076376 (Bankr. C.D. Ill. 2001).** However, Barker's circumstances are not sufficiently analogous to those in *Grawey* for this Court to find that his loans should be discharged. In *Grawey*, the court found that a 41-year-old debtor who had never made more than $17,500 in a year was entitled to discharge of her student loans. *Id***. at \*1.** The debtor had four children and was owed over $20,000 in back child support from a former spouse with a history of violence and subject to a domestic violence order of protection. *Id*. The debtor lived in a house rent free and received $200 per month from her friend to survive. *Id.* The court found that the debtor continued to work and had cut "her expenses to the bone and

relying on the generosity of a friend to maintain a roof over her and her children's heads." *Id.* at *2.* The debtor had worked as a teacher, in a grocery store, in an auto parts store, made deliveries, performed clerical work, and had even supplemented her income with janitorial work. *Id.* at *1.* As a result, the court found that the debtor had maximized her income potential and had carried the burden of proving the elements of the *Brunner* test, establishing "undue hardship." *Id.* at *3.*

While Barker also has child support obligations and must currently rely on the generosity of a friend to make ends meet, Barker has not persuaded this Court that he has sufficiently maximized his income potential to support the finding that his present inability to make payments on the student loans is likely to persist for the foreseeable future. Barker's circumstances bear greater similarity to those in *Goulet*. Barker's academic and employment history indicate that he has the capacity to work and can apply himself when desired. Barker has made significant income in the past and kept his last job for five years.

Additionally, unlike *Grawey*, Barker's exhibits B167-B172 indicate that, for approximately five months before the bankruptcy hearing, Barker essentially limited his search for employment to administrative and managerial positions within his chosen field of study. Barker argues that he is unemployable because he is a divorced man with an education only qualifying him to perform work as a minister. As such, Barker claims that he will not be able to obtain employment because few churches, if any, are willing to hire a divorced minister. However, Barker's limitations in pursuing work in his field of choice are not relevant to the *Brunner* inquiry, and are no more persuasive than the hurdles the debtor in *Goulet* faced due to his chemical dependencies and criminal record. A debtor will many times be required to accept employment outside of his preferred field in order to meet financial obligations. As a result,

Barker has failed to carry his burden to prove that his present inability to make payments on the student loans is likely to persist for a significant portion of the repayment period. And though Barker cites a number of cases outside of this jurisdiction in support of his position, none are controlling or factually similar enough to be persuasive.

Because Barker failed to meet his burden of establishing the first two prongs of the *Brunner* test, the Court need not analyze the third prong. **Roberson, 999 F.2d at 1135.** It should be noted that although the bankruptcy court never analyzed evidence presented under the third prong of the *Brunner* test, Barker contends that the court improperly considered the availability of an Income Contingent Repayment Program (ICRP), known as the William D. Ford program. Barker's argument does not accurately reflect the bankruptcy court's analysis. While the bankruptcy court noted that Barker could explore programs that might assist him in making repayment, it emphatically stated, "[T]hat's not a factor in this Court's decision" (Doc. 21-4, p. 49). Because the bankruptcy court properly did not consider ICRPs as a factor when rendering its decision on application of the first two prongs of *Brunner*, and appropriately did not analyze the third prong of the *Brunner* test, Barker's argument on this point is inapplicable.[6]

Therefore, after conducting a *de novo* review of the decision of the bankruptcy court giving appropriate deference to all findings of fact that were not clearly erroneous, the Court finds that Barker's present inability to meet his financial commitments are not likely to persist for a significant portion of the repayment period, as he has not established a certainty of

---

[6] Barker cites many cases that discuss participation in various ICRPs as evidence of good faith, the third prong of the *Brunner* test. In *Grawey*, the Court held that the failure of the debtor to participate in the William D. Ford program was not decisive as to *Brunner's* third prong. **Grawey, 2001 WL 34076376 at \*6.** The court stated that "[w]hether a debtor sought to participate in this program as an alternative to bankruptcy might have some relevance to *Brunner's* third prong, but it is certainly not the *sine qua non* of a good faith repayment effort." *Id.* **at \*6.** *See also In re Kehler*, **326 B.R. 142, 149 (Bankr. N.D.Ind. 2005) (debtor's failure to explore available payment options can be a sign that debtor has not made a good faith effort to repay debts under the third prong);** *In re Simmons*, **334 B.R. 632, 637 (Bankr. C.D.Ill. 2005) (explaining that participation in an ICRP is "often considered as a factor in determining good faith").**

hopelessness. Because Barker has failed to meet his burden of establishing this prong of the *Brunner* test, Barker has failed to establish that repayment of his student loans constitutes an undue hardship. Accordingly, Barker's student loans are not dischargeable under 11 U.S.C. § 523 (a)(8)(B).

### E. Conclusion

For all of the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** ECMC's motion to strike (Doc. 19) and **AFFIRMS** the decision of the bankruptcy court that Barker's outstanding debt is $72,012.28 and that Barker's student loans cannot be discharged.

**IT IS SO ORDERED.**

**DATED this 18th day of March 2008.**

>     **s/ Michael J. Reagan**
>     **MICHAEL J. REAGAN**
>     **United States District Judge**